**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| Pro Fab Sheet Metal, Inc.; <br><br> Plaintiff, <br><br> v. <br><br> Sheet Metal Workers International Association Local 20; <br><br> Defendant. | Case No. 2:13-CV-366 JVB |

**OPINION AND ORDER**

In this lawsuit, Plaintiff, a sheet metal fabricator, alleges that Defendant, Sheet Metal Workers International Association Local 20, has failed to abide by the terms of a collective bargaining agreement. Plaintiff makes two state law claims and two federal claims associated with Defendant's alleged misconduct. First, Plaintiff alleges that the union breached the collective bargaining agreement and tortuously interfered with its business relationship with Arctic Engineering, who is one of its customers. Plaintiff's two federal claims allege unfair labor practices by Defendant that are prohibited by Section 7 (29 U.S.C. § 157) and Section 8(b) (29 U.S.C.S. § 158(b)) of the National Labor Relations Act. Section 7 protects an employee's right to seek or abstain from union membership and Section 8(b)(4) prohibits a union from trying to compel a third party to cease doing business with the union's primary employer as a result of their dispute. In response, Defendant union has filed a motion to dismiss or stay all of Plaintiff's claims.

**A. Background**

Plaintiff employs numerous Union employees who fabricate sheet metal for commercial construction uses. (DE 1, Compl. at 1.) The relationship between Plaintiff and the Union is governed by a collective bargaining agreement. (DE 1, Compl. at 1–2.) This Agreement requires that an injured party, either the employer or the union, provide written notice of any grievance, which commences a dispute resolution process that mandates arbitration to resolve the dispute. (DE 1, Compl. at 4.)

Plaintiff alleges that on October 2, 2013, a union representative removed the union labels that Plaintiff affixes to its products from their manufacturing facility. (DE 1, Compl. at 5.) These labels inform Plaintiff's customers that the products were fabricated by union employees. The removal of these labels is critical for Plaintiff's operations because products that do not possess the union label may be rejected by contractors or union members responsible for installing the products. (DE 1, Compl. at 5.) After confiscating the union labels, the union representative informed Pro Fab's vice president of his actions. (DE 1, Compl. at 5.) Days after removing the labels from Plaintiff's facility, Defendant notified Plaintiff that this action was taken in response to a shortage of benefit payments due to the union. (DE 1, Compl. at 8.) The union representative never provided the employer with notice of his grievance or arbitrate this dispute as required by the collective bargaining agreement. (DE 1, Compl. at 5–6.)

After removing the union labels from Plaintiff's facility, Defendant notified Arctic Engineering, one of Plaintiff's customers, of its actions. On October 2, the same day the labels were seized by the union, Arctic Engineering contacted Plaintiff and relayed that they would not accept or install Plaintiff's product without these labels. (Compl. at 6.) Previously, Arctic

Engineering placed an order with Plaintiff that was to be delivered on October 4, 2013. (*Id*.) On October 3, 2013, Arctic Engineering relayed to Plaintiff that the union was contemplating allowing them to accept the delivery of Plaintiff's goods, even without the stickers. (Compl. at 7.) On October 4, 2013, Plaintiff's goods were delivered and Arctic Engineering relayed to Plaintiff that the union had expressly permitted the delivery. (*Id*.) Plaintiff does not allege that any other customers were contacted by Defendant or any other deliveries affected by the removal of the union labels by Defendant.

In response to the Union's seizure of the labels Plaintiff pursued a temporary restraining order requiring the immediate return of the union labels and filed a Complaint alleging unfair labor practices, breach of contract, and tortuous interference with a business relationship. (DE 1, Compl.; DE 2, Mot. Temp. Rest. Order.) This Court granted Plaintiff's request for a temporary restraining order and required Defendant to return the union labels October 16, 2013, eleven days after they had been seized by the Union. (DE 11, Order at 4.)

In response to Plaintiff's Complaint, Defendant union has moved to dismiss or stay all of Plaintiff's claims. Defendant maintains that Plaintiff's federal claims, both involving unfair labor practices, must be dismissed because this court lacks jurisdiction of Section 7 claims and because Plaintiff has failed to properly state a claim alleging unfair labor practices prohibited by Section 8(b)(4) of the National Labor Relations Act. Next, Defendant contends that the alleged breach of contract claim must be dismissed or stayed pending the results of contractually mandated arbitration. Defendant also asserts that the tortious interference claim, raised under state law, is preempted by federal labor law because it requires the Court to interpret the collective bargaining agreement.

**B. Standard for Evaluating a Motion to Dismiss**

Dismissing a case is appropriate if the complaint sets forth no viable cause of action upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In assessing the propriety of dismissal under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them as true and in the light most favorable to Plaintiff. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001).

A complaint is not required to contain detailed factual allegations, and plaintiffs' claims are subject to dismissal only if it is clear that they can prove no set of facts consistent with the allegations in the complaint that would entitle them to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964–65 (2007). The Court is not required to accept Plaintiffs' legal conclusions. Pursuant to Rule 8(a)(2), plaintiffs must provide a ground to their entitlement to relief, which requires more than labels and conclusions. *Fries v. Helsper*, 146 F.3d 452, 456 (7th Cir. 1998).

**C. Analysis**

Defendant asserts that all federal claims must be dismissed because this Court lacks jurisdiction over § 7 claim and Plaintiff has failed to state a claim upon which relief can be granted for violating § 8(b). Defendant is correct. This Court lacks jurisdiction over unfair labor practices claims raised pursuant to § 7 and Plaintiff has failed to state a cognizable claim that Defendant violated § 8(b). Thus, with all federal claims dismissed before trial, this Court will forego exercising supplemental jurisdiction over the two state claims.

Plaintiff's suit against Defendant raises two claims for unfair labor practices. One claim alleges that Defendant has coerced, harassed, and intimidated employees to make claims against Plaintiff. These claims would then be used by Defendant to force Plaintiff to hire certain

members of the union. Plaintiff alleges that this conduct violates § 7 and § 8(b). Plaintiff's second unfair labor practices claim alleges that Defendant has engaged in harassing and intimidating conduct designed to force Plaintiff to hire certain members of the union and defamatory and libelous conduct that damaged Plaintiff's business reputation. This claim is based solely on § 8(b) of the National Labor Relations Act.

Plaintiffs claim under § 7 must be dismissed because the National Labor Relations Board has exclusive jurisdiction over it. The Supreme Court, in establishing the *Garmon* preemption doctrine, left determinations of § 7 and most § 8 claims to "the exclusive primary competence of the Board." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–245 (1959). *Garmon* pre-emption seeks to "prevent conflicts between state and local regulation and . . . to protect the NLRB's primary jurisdiction in cases involving sections 7 and 8 of the NLRA. *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1125 (7th Cir. 2008). Accordingly, "[t]hough sections 7 and 8 may create a federal cause of action, it is not within the federal court's jurisdiction to resolve the dispute . . . it is for the NLRB to decide the case." *Smart v. Local 702 IBEW*, 562 F.3d 798, 806 (7th Cir. 2009). Federal courts may only intercede in these claims if they arise "as collateral issues in suits brought under independent federal remedies, such as the antitrust laws." *Tri-Gen Inc. v. Int'l Union, Local 150, AFL-CIO*, 433 F.3d 1024, 1034 (7th Cir. 2006) (citing *Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 626 (1975)).

Accordingly, *Garmon* preemption prevents this Court from exercising jurisdiction over Plaintiff's unfair labor practices claim that attempts to redress the alleged mistreatment of its employees. This alleged misconduct clearly falls within Section 7 and, since this is a central, non-collateral claim, this Court must dismiss this claim because it does not have jurisdiction.

This Court does have jurisdiction over Plaintiff's unfair labor practices claim raised pursuant to Section 8 (b)(4) the National Labor Relations Act. *Tri-Gen Inc. v. Int'l Union, Local 150, AFL-CIO*, 433 F.3d 1024, 1034 (7th Cir. 2006). Section 8(b)(4) defines an unfair labor practice as an attempt by a labor organization: "to threaten, coerce, or restrain any person engaged in commerce" with the intent of "forcing or requiring any person . . . to cease doing business with any other person." 29 U.S.C. § 158(b)(4). The statute prohibits a union from advancing their cause "by pressuring unrelated, secondary employers to stop dealing with the primary employer." *BE&K Constr. Co. v. Will & Grundy Counties Bldg. Trades Council*, 156 F.3d 756, 761 (7th Cir. 1998). Additionally, if the union acts with mixed motives, partially targeting their employer and partially targeting the other business, its conduct is unlawful under section 8(b)(4). *Mautz & Oren, Inc. v. Teamsters, Chauffers, etc., Local No. 279*, 882 F.2d 1117, 1121 (7th Cir. 1989) ("it is not necessary to find that the sole object of the strike was secondary so long as one of the union's objectives was to influence the secondary employer to bring pressure to bear on the primary.").

However, "more than mere persuasion" is required for a violation of 8(b)(4). *520 S. Mich. Ave. Assocs. Ltd v. Unite Here Local 1*, 939 F. Supp. 2d 863, 873 (N.D. Ill. 2013) (citing *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 578 (1988)). In *Debartolo* the Court found that peaceful handbilling outside of a secondary employer did not violate Section 8(b)(4). The Court reasoned that a simple communication of ideas did not threaten, coerce, or restrain and that these words in the statute should be should be "interpreted with caution and not given a broad sweep." *Id.* In addition, the burden is on Plaintiff to "prove that the union intended to pressure the secondary employer and that the union engaged in illegal

conduct to that end." *Carpet Service Int'l v. Chi. Reg. Council of Carpenters*, 698 F.3d 394, 400 (7th Cir. 2012).

A party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006). A plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006). If a plaintiff provides facts in the complaint that are useful to Defendant, Defendant may use those facts to demonstrate that Plaintiff is not entitled to relief. *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995).

Plaintiff has pled itself out of court by outlining how Defendant took actions to ensure no secondary business was negatively affected by their conduct. The Complaint states that Defendant informed Plaintiff's customer of a dispute, but did not prevent that customer from receiving their shipment. This conduct is even less threatening, coercive, or restraining then the handbilling that courts have found to not violate Section 8(b)(4). Plaintiff's Complaint outlines that Arctic Engineering was expressly told by Defendant that they could accept Plaintiff's merchandise, even though the union labels would not be affixed to this shipment. Merely notifying a secondary business of a dispute by telephone, coupled with explicit instructions to continue doing business with the primary employer, does not fall within the scope of conduct prohibited by Section 8(b)(4).

Moreover, Plaintiff's allegations do not rise above speculation because Arctic Engineering was not affected by Defendant's conduct and Plaintiff does not allege that any other customers were contacted by Defendant. Accordingly, this Court must dismiss this unfair labor practices claim as well.

7

The remaining state tort claims, breach of contract and tortious interference with a business relationship, require this Court to decide if it should exercise supplemental jurisdiction. District courts may exercise supplemental jurisdiction over state law claims when they are closely related to the federal claims presented to the court. 28 U.S.C. § 1367(a) (2012). However, when all federal law claims have been eliminated before trial and only supplemental state law claims remain, the Court of Appeals for the Seventh Circuit prefers that district courts remand or dismiss without prejudice these state law claims. *See, e.g., Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts."). Accordingly, this Court will dismiss the remaining state tort claims without prejudice.

**D.     Conclusion**

Accordingly, the Court lacks jurisdiction over Plaintiff's Section 7 unfair labor practices claim. Additionally, the Plaintiff is unable to prove any set of facts entitling him to relief against Defendant for the Section 8 (b)(4) claim. The Court will not exercise supplemental jurisdiction over the state law claims for breach of contract and tortious interference with a business relationship. For all these reasons, the Court grants Defendant's Motion to Dismiss the Amended Complaint (DE 15).

SO ORDERED on September 19, 2014.

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE